USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/5/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
DANIEL SEAN MALONE,

                Petitioner,

            -against-

CREDIT SUISSE SECURITIES (USA), LLC,

                Respondent.
------------------------------------------------------------- X

18-CV-6872 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

    Petitioner Daniel Malone seeks to vacate an arbitration decision that rejected all of his claims against his former employer, Respondent Credit Suisse Securities (USA), LLC ("Credit Suisse"). Credit Suisse has cross-petitioned to confirm that same decision. Malone's sole argument for vacating the award is that the composition of the arbitration panel violated agreed-upon arbitration rules. Because he waived that argument by knowingly completing the arbitration without objection, Malone's petition to vacate is denied, and Credit Suisse's petition to confirm is granted.

## I.     Background

    There is no factual dispute as to how the arbitration proceeding unfolded.

    In 2016, Daniel Malone filed a statement of claim, which he later amended, against Credit Suisse, pursuant to an arbitration agreement that adopted the rules and procedures set by the Financial Industry Regulatory Authority, Inc. ("FINRA"). *See* Dkt. 4 at 1–2. He alleged breach of implied contract, breach of implied covenant of good faith and fair dealing, fraud in the inducement, and promissory estoppel. Dkt. 4-3 at 5.

According to FINRA rules, the arbitration panel had to consist of three members—two "public" arbitrators and one "non-public" arbitrator. FINRA Rule 13401(c), 13403(b); Dkt. 4-1 at 3–4. FINRA rules define "public" and "non-public" arbitrators based on the individual arbitrator's past work experience, activities, and associations. FINRA Rule 13100(r), (x). An arbitrator is disqualified from serving as a "public" arbitrator and must be classified as "non-public" if, among other things, he or she is or was associated with a securities broker or dealer or other types of registered entities in the financial industry. *See id.*

To construct the panel, FINRA first provides to the parties a list of ten arbitrators for each of the three spots on the panel. *Id.* at 3. The parties receive a disclosure report for each potential panelist, which includes each arbitrator's education, skills, experiences, and conflicts, as well as his or her "public" or "non-public" classification. *See, e.g.*, Dkt. 4-1, 6–10. The parties can each strike, without cause, as many as four names from each list before ranking the remaining candidates. *Id.* at 7. FINRA then selects the three panel members based on the parties' respective rankings. *Id.* at 4.

Malone and Credit Suisse participated in the strike-and-rank selection process, which yielded Nancy Kramer, Sandra Parker, and Adam Ciffone. Dkt. 16-2 at 8. Kramer, who was the designated chairperson,[1] and Parker were both classified as "public" arbitrators; Ciffone was designated "non-public." *Id.*

On April 10, 2017, at a pre-hearing conference, the parties accepted the panel as composed. Dkt. 16-3 at 9. The panel held hearings on February 22 and 23 and on April 19 and

---

[1] The chairperson of the panel must be a "public" arbitrator who is "chair-qualified." FINRA Rule 13403(b); Dkt. 4-1 at 3.

20, 2018. Dkt. 4-3 at 8. The parties filed post-hearing submissions on June 4, 2018,[2] and the panel rendered its decision on June 28, 2018, unanimously denying all of Malone's claims in their entirety. Dkt. 4-3 at 2, 6.

Between the February and April hearings, FINRA realized that Parker had been misclassified as a "public" arbitrator. Dkt. 1-5 at 2. Because she had been employed by Metropolitan Life Insurance Company, a registered broker-dealer, from 1987 to 1996, Parker should have been classified as a "non-public" arbitrator. *Id*. The fact that Parker previously worked for Metropolitan Life had been disclosed in the original disclosure report that was provided to the parties, but, for reasons unknown, she had been erroneously classified as "public" on the report. Dkt. 1-1 at 46.[3] This meant that the panel had only one "public" arbitrator, rather than the requisite two.

On March 16, 2018, FINRA sent the parties an updated arbitrator disclosure report for Parker. Dkt. 16-4. Although the purpose of that report was to disclose an additional conflict, it correctly reflected Parker's classification as "non-public." *See* Dkt. 16-4 at 1, 4. On March 21, 2018, in an unrelated arbitration matter for which Parker also served as a panel member, Malone's counsel received a letter expressly informing him that Parker had been misclassified as a "public" arbitrator. *See* Dkt. 1-5 at 2. Then, on April 19, 2018, FINRA sent the parties in this case another updated disclosure for Parker. *See* Dkt. 16-5 at 2, 4. As with the March 16 report, the purpose was to disclose an additional conflict; the report on April 19 correctly reflected

---

[2] Credit Suisse represents that filings were submitted on June 4, 2018, a point that Malone does not contest. Credit Suisse Mem. (Dkt. 18) at 5.

[3] FINRA apparently changed the arbitrator definitions in 2015, but Parker's classification was apparently not updated to reflect the revised definitions. Dkt. 1-5.

3

Parker's classification as "non-public." *See id*. Neither Malone nor Credit Suisse objected to the panel's composition.

On July 31, 2018, approximately one month after the panel had rejected all of Malone's claims against Credit Suisse, Malone petitioned to vacate the decision as exceeding the panel's authority because the panel was improperly constituted. Dkts. 1, 3 at 15.

## II.     Discussion

### A. Malone's Petition to Vacate the Arbitral Award

Malone argues that the arbitration decision must be vacated because the composition of the panel violated FINRA rules and thus the parties' arbitration agreement. Credit Suisse counters that the decision should be confirmed because Malone waived his procedural argument by continuing to arbitrate after he knew or should have known that the panel was improperly constituted. Because Malone knowingly acquiesced to the panel's authority, the Court concludes that he has waived his challenge to the panel's composition.

The Second Circuit has long held that a failure to make a timely objection to the selection of an arbitrator precludes a party from later vacating the arbitral award on the basis that the arbitrator was improperly chosen. *See Cook Indus., Inc. v. C. Itoh & Co. (Am.) Inc.*, 449 F.2d 106, 107–08 (2d Cir. 1971); *Garfield & Co. v. Wiest*, 432 F.2d 849, 853 (2d Cir. 1970); *see also Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 191 (2d Cir. 2013) ("[W]here a '[party] participates in an arbitration hearing without voicing objection to the arbitrator's authority to decide the matter, the [party] waives its right to challenge the arbitrator's jurisdiction.'" (quoting *United Indus. Workers v. Gov't of Virgin Islands*, 987 F.2d 162, 169 (3d Cir. 1993)) (alterations omitted)).

The principles underlying the waiver rule are straightforward. Because any restrictions on the selection of arbitrators are created by the parties' mutual consent, they may also be modified by later agreement, including by the parties' knowing acquiescence to a deviation from their agreement. *See Sokolowski*, 723 F.3d at 191 ("Because arbitrators derive their authority from the contractual agreement of the parties, a party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration and failing to object[.]" (citation and alteration omitted)). The rule also serves the interests of efficiency and finality, as it prevents parties from sitting on their rights during arbitration and then getting a second chance from the courts should they lose. *See Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 149 (3d Cir. 2015).

The rule therefore applies with the greatest force when a party "remain[s] silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain[s] of a situation of which he had knowledge from the first." *See Cook Indus.*, 449 F.2d at 107–08. Since *Cook Industries*, the Second Circuit has indicated that, in some circumstances, an objection may not be timely *even if* it were raised before the panel has rendered its decision. *See York Research Corp. v. Landgarten*, 927 F.2d 119, 122 (2d Cir. 1991) ("*Cook Industries* did not hold that a party aware of the grounds for an objection may nevertheless delay that objection so long as the award has not been made.").

In this case, there is no question that Malone waited until the last possible moment to object to the designation of Parker as a member of the arbitration panel, even though he knew or should have known for months that she should not have been so classified.[4] *See* Malone Reply

---

[4] Credit Suisse argues that Malone knew or should have known that Parker was a non-public arbitrator from the outset of the arbitration. *See* Credit Suisse Mem. (Dkt. 18) at 7. It is undisputed that Malone first learned of the facts underlying Parker's misclassification when he received FINRA's original disclosure reports, dated January 30, 2017. Dkt. 4-1 at 2. That initial disclosure report classified Parker as a "public" arbitrator, but it also disclosed that

5

(Dkt. 19) at 3 (acknowledging that objection was not raised until time to petition for vacatur had nearly expired).

Malone argues that the March 16 and April 19 disclosure reports were inadequate because they did not call his attention to Parker's reclassification.[5] *See* Malone Reply (Dkt. 19) at 1–3. That argument is not entirely without merit, but on March 21, 2018, Malone's counsel did receive a letter specifically informing him that Parker had been incorrectly designated as a "public" arbitrator. Dkt. 1-5 at 2. While it is true that the letter was sent in relation to a different arbitration matter, the fact remains that Malone's counsel was expressly informed, while Malone's arbitration was ongoing, that one of the arbitrators who was serving on Malone's panel had been misclassified. Malone raised no objection to Parker serving as an arbitrator and proceeded with a hearing before the panel on April 20, 2018. He filed a post-hearing submission on June 4, 2018, before eventually receiving the panel's unanimous decision on June 28, 2019. Dkt. 4-3 at 2. Malone contested Parker's selection for the first time in a motion to vacate filed on July 31, 2018—four months after he knew or should have known of the issue.[6]

---

Parker had previously worked for Metropolitan Life Insurance—the factual basis for her later re-classification as a "non-public" arbitrator under FINRA Rule 13100. While Credit Suisse might be correct that a party familiar with the industry, represented by experienced counsel, arguably should have known that an entity like Metropolitan Life would be registered as a broker-dealer and therefore that Parker had been misclassified, the record in this case does not support such a conclusion.

[5] Malone also seems to suggest that parties to arbitration cannot reasonably be expected to open an attachment to view its contents. *See* Malone Reply (Dkt. 19) at 1–3 ("Attached is an updated Arbitrator Disclosure Report for Arbitrator Sandra D. Parker." (quoting Dkt. 16-5)). The Court declines to endorse such willful blindness. *See Sanko S.S. Co. v. Cook Indus., Inc.*, 495 F.2d 1260, 1265 (2d Cir. 1973) (noting that waiver rule may apply if party seeking vacatur either "knew or should reasonably have known" about alleged defect during the arbitration proceeding). Knowledge that the disclosure report was revised should have, at minimum, prompted Malone to review the revised disclosure report. *See Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 30 (2d Cir. 2004) (holding that arbitral award should not be vacated even if petitioner did not receive required disclosures if he could have but did not make timely inquiry into missing disclosures that he knew existed).

[6] Although not raised by Credit Suisse, it appears that Malone's petition to vacate may have been untimely. As he admits in his Reply brief, Malone had thirty days from receipt of the panel's decision to file a petition to vacate. *See* Malone Reply (Dkt. 19) at 3; FINRA Rule 13904(j). The panel's decision was signed on June 25, 2018 and has a date of service of June 28, 2018. Dkt. 4-3. Accordingly, the 30-day deadline would have expired before Malone's filing on July 31, 2018.

Malone's objection to Parker's service as an arbitrator therefore falls squarely within the scope of the waiver rule. *See Garfield*, 432 F.2d at 853 ("It is well settled that disgruntled losers cannot first raise their objections after an award has been made."). The fact that Parker had been misclassified was disclosed to Malone and his attorney in three different ways before the final hearing was held by the arbitrators and months before the panel rendered its decision. Rather than object once he had the necessary information, Malone did precisely what the Second Circuit in *Cook Industries* warned *not* to: "remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down[,] complain of a situation of which he had knowledge from the first." *See* 449 F.2d at 107–08.

FINRA's process for notifying parties of changes in a panel member's classification needs improvement, but it does not relieve Malone of his obligation to make a timely objection. The Court agrees with Malone that FINRA should have taken more affirmative efforts to specifically notify all parties then arbitrating a dispute before a panel on which Parker served that she had been misclassified. In other words, burying a changed classification in a revised disclosure report, which could have been modified in any number of ways, is not reasonable notice. Any inadequacy in FINRA's disclosure of Parker's misclassification via revised disclosure reports, however, is of no significance to Malone, because his attorney received a letter dated March 21, 2018, expressly notifying him of the misclassification. The fact that the March 21 letter was sent in relation to a different matter is immaterial: Malone's attorney, who is his agent, was fully apprised of the misclassification while Malone's arbitration was pending. *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) ("In general, when an agent is employed to represent a principal with respect to a given matter and acquires knowledge material to that representation . . . the agent's knowledge is imputed to the principal." (citing Restatement

7

(Second) of Agency §§ 9(3), 268, 272, 275 (1958))) (concluding that "relationship between an attorney and the client he or she represents in a lawsuit is one of agent and principal").  As the Second Circuit held in *Cook Industries*, the waiver rule applies if a party fails to timely act on known facts.  *See* 449 F.2d at 107–08.  Because Malone, through his attorney, was "fully aware" of the allegedly uncommunicated information prior to the panel's decision and continued to accede to the panel's authority, his argument about the composition of the panel has been waived.  *See id.*; *see also Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 30 (2d Cir. 2004) ("[W]e have declined to vacate awards because of undisclosed relationships where the complaining party should have known of the relationship or could have learned of the relationship just as easily before or during the arbitration rather than after it lost its case." (internal citations and quotations omitted)).

In sum, the Court concludes that Malone, by completing arbitration without any objection before a panel that he knew or should have known to be improperly constituted, has waived his right to vacate the panel's decision on that ground.  Because Malone has waived the sole basis for his motion to vacate the arbitral award, the Court declines to address Credit Suisse's alternative arguments that Malone's petition also fails on the merits.

### B.  Credit Suisse's Cross-Petition to Confirm the Arbitration Award

"[C]onfirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court[.]"  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).  The court "must grant" an order confirming the award unless there is a valid statutory basis to vacate, modify, or correct the award.  *Id.* (quoting 9 U.S.C. § 9).  The

"party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *Id.*

Of the available statutory grounds for vacating, modifying, or correcting the arbitration award, *see* 9 U.S.C. §§ 9, 10, Malone has argued only that the arbitration panel exceeded its authority when it rendered a decision despite being improperly constituted, *see* Dkt. 3 at 15, an argument that this Court now determines to have been waived. Because Malone has articulated no other basis for opposing confirmation of the arbitration award, he has failed to carry his burden.

Although the arbitration panel did not explain its rationale for denying Malone's claims, it was not required to do so. *See Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) ("Arbitrators need not explain their rationale for an award." (citation and alterations omitted)). There is no dispute that the parties had a valid agreement to arbitrate their claims under FINRA Rules, and the panel, other than the misclassification issue already discussed, conducted an arbitration pursuant to FINRA Rules and considered all of Malone's claims, including by holding several hearings during which both sides were able to present their evidence and arguments.

Because Malone has not provided any basis to conclude that the panel's decision lacked even "a barely colorable justification for the outcome," the arbitration award is confirmed. *See Gottdiener*, 462 F.3d at 110.

### III.    Conclusion

For the foregoing reasons, Malone's petition to vacate the arbitration award, Dkt. 1, is DENIED. Credit Suisse's cross-petition to confirm the arbitration award, Dkt. 15, is

GRANTED. The Clerk of Court is respectfully directed to terminate all pending motions and deadlines and to close the case.

**SO ORDERED.**

**Date: February 5, 2019**
   **New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**